In the Matter of the Estate of MARY ANN HANLEY, Otherwise Called MARY ANN O'REILLY, Deceased.

*Evidence — to disqualify a person from testifying as to transactions with a deceased person on the ground of his interest in the result — his interest must be a present and fixed one — Code of Civil Procedure, sec. 829.*

Appeal by James Toole and others, next of kin, from an order denying a motion to revoke and vacate letters of administration issued to James O'Reilly.

The intestate died at 510 East Thirteenth street, the place of her preceding residence, on the 28th of April, 1880, and letters of administration were issued upon her estate to James O'Reilly, as her husband. She left no children and her first cousins were her next of kin. They applied to the surrogate to vacate and set aside the letters of administration, upon the allegation that the intestate was not at any time the wife of O'Reilly. This was denied by him, he asserting that he was her husband at and before the time of her decease. It was thereupon referred by the surrogate to a referee to take the proof upon this controverted allegation, and to return it with his opinion upon it to the surrogate. The referee took a large amount of testimony and stated his opinion or conclusion to be that the intestate and the administrator never sustained the relation of husband and wife to each other. It was conceded in the course of the proceeding before him, that there was no ceremonial marriage between the parties, and whether they had been married in fact by their own agreement and conduct, was a controverted subject before the referee. The surrogate took a different view of the evidence from that which had impressed itself on the mind of the referee, and held that it did establish a marriage between these parties, and because of that fact the application to vacate or set aside the letters of administration was denied.

The court at General Term after considering the evidence, and not deciding whether or not the proof was sufficient to justify a finding that a contract of marriage had been entered into, said, referring to the decision of the surrogate: "But while that decision may have had the support of the evidence it did not justify a denial of the application, for exceptions have been

taken on the hearing to the exclusion of evidence by the referee, which should have been received by him. And until that evidence is in the case, and the ruling corrected in this manner, it will not be in a condition for final decision. It was proposed to be shown by Mary Devin, who was a second cousin of the intestate, that she had a conversation with her during her last illness regarding her relations with O'Reilly. This was objected to on the ground that the witness was incompetent to relate the conversation under section 829 of the Code of Civil Procedure, and her evidence was excluded under the construction that she was interested in its result. But she had no other interest than that of being entitled to participate in the estate as one of the next of kin of the intestate, after the decease of all the first cousins of the latter, and that on account of their number was so remote as scarcely to arise to the dignity of a possibility. What this section of the Code has done in the way of directing the exclusion of witnesses, is restricted to those who are interested in the action or proceeding. That exclusion depends upon a present fixed interest, not one remote and contingent, as was the mere possible interest of this witness. That was also the rule under the preceding system of practice excluding interested witnesses as incompetent. It never was applied to the exclusion of the testimony of a witness having but a bare possibility of becoming interested at some future period of time. And the referee, therefore, erred in the ruling excluding the testimony proposed to be given by this witness. And as it related to a conversation with the intestate during her last illness, it may have been entirely controlling over this controversy. A like ruling was made excluding a conversation with the same witness, proposed to be shown to have taken place on the 7th of April, 1880. The referee also struck out, as incompetent, an answer given by the witness Mary Ann Fagan, testifying that she did not believe the intestate was married, although she had previously received information that the fact was otherwise from the intestate. But this ruling was corrected by an answer afterwards received and retained to the same effect. A very large number of other exceptions were taken in the progress of the hearing before the referee, but these seem to be the only ones deserving of any special attention. The evidence proposed to be taken from the witness Mary Devin should

have been received, and the order denying the application to vacate or set aside the letters testamentary should be reversed, and an order made sending the case back to the referee with directions to receive this testimony, and any other additional evidence bearing upon the controverted marriage which may be offered by either party and the costs of the appeal should abide the final result of the proceeding."

*Johnson & Tilton,* for the appellants, James Toole and others.

*A. Latham Smith,* for James O'Reilly administrator, respondent.

Opinion by Daniels, J.; Van Brunt, P. J., and Brady, J., concurred in the result directed in opinion, costs to abide event.